IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:12-cr-30171-DWD-2 |
| HAROLD M. WHITE, JR., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendant Harold M. White, Jr.'s motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 756) White, who is currently incarcerated at FCI-Memphis, seeks a modification of his sentence because of his medical conditions. (Doc. 756 at 6)[1] For the following reasons, his motion is due to be denied.

### BACKGROUND

On January 23, 2014, White pled guilty to nine counts of a ten-count second superseding indictment for conspiracy to commit theft from interstate shipments and possess stolen goods, theft of interstate shipment, and possession of stolen goods. (Doc. 396 at 4) As part of his plea agreement, White agreed to waive "his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28." (Doc. 396 at 8) On July 25, 2014, White was sentenced to a total term of imprisonment of 120 months, to be followed by a three-year term of supervised release. (Doc. 511 at 3–4)

---

[1] All record citations refer to the document and page number as designated by the Court's electronic filing system.

White suffers from hypertension, epilepsy, glaucoma, gout, and polyps which he had surgically removed from his colon. (Docs. 756 at 6; 760-1 at 6, 8 & 20) He had a confirmed case of COVID-19 on December 3, 2020, but had recovered by December 14, 2020. (Doc. 760-1 at 21) On February 5 and March 8, 2021, he received two doses of the COVID-19 Moderna vaccine. (Doc. 760-1 at 34) On March 8, 2021, he was cleared to work the food service with no restrictions. (Doc. 760-1 at 35)

FCI-Memphis currently has no inmates or staff who have tested positive for COVID-19. *Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last accessed June 9, 2021). While two inmates at FCI-Memphis have died from COVID-19 since the pandemic began, 336 inmates and 74 staff members have recovered from the virus. *Id.* The Bureau of Prisons has implemented a Modified Operations Plan to combat the spread of COVID-19 in all of its facilities. *BOP Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed June 9, 2021).

## THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it from the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier.[2] The defendant bears the burden of showing that he is entitled to relief under the First Step Act. *United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020).

After such a motion is filed, either by the Director of the Bureau of Prisons or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement essentially restates § 3582(c)(1)(A), but the Application Notes to the policy statement suggest specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. § 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

## DISCUSSION

White lists several medical conditions as the basis for his request for

---

[2] The United States does not contend that White failed to exhaust his administrative remedies.

compassionate release. (Doc. 756 at 6) However, he does not explain why those conditions constitute extraordinary and compelling reasons for a sentence modification. The Sentencing Commission suggests that terminal illnesses such as metastatic solid-tumor cancer, ALS, end-stage organ disease, and advanced dementia are the kind of medical conditions that would constitute extraordinary and compelling reasons for a sentence modification. *Application Notes*, U.S.S.G. § 1B1.13. A serious deterioration in health due to aging or the incapacitation of the defendant's spouse or the caregiver to his minor children would also constitute extraordinary and compelling reasons for a sentence modification. *Id.* Far from indicating a terminal illness or serious deterioration, White's medical records from as recent as January 7, 2021, indicate that he was taking medication to treat his conditions and that he was "[c]apable of performing all activities of daily living (ADL) -Independent." (Doc. 760-1 at 8–10, 36–37) They also indicate that he had been cleared to work on the food service with no restrictions. (Doc. 760-1 at 35)

Although White does not raise the specter of COVID-19 in his motion, the pandemic also fails to create extraordinary and compelling reasons for sentence modification. For starters, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Further, FCI-Memphis currently has no inmates or staff who have tested positive for COVID-19. Even if there were active COVID-19 infections at FCI-Memphis, White has already recovered from the virus and has since been vaccinated. In short, White has not met his

burden to show extraordinary and compelling reasons for sentence modification.[3]

## CONCLUSION

For these reasons, it is ORDERED that White's motion for compassionate release (Doc. 756) is DENIED.

**SO ORDERED.**

Dated: June 11, 2021

_____
DAVID W. DUGAN
United States District Judge

---

[3] The United States also argues that White's plea agreement included a waiver of his right to seek relief under 18 U.S.C. § 3582(c)(1)(A). However, the Court assumes without deciding that White has not waived his right to seek a sentence modification under § 3582(c)(1)(A). The Seventh Circuit has held that a waiver barring a defendant from seeking modification of any aspect of his sentence applied "to his right to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)" when the waiver was made *after* the First Step Act was passed. *United States v. Bridgewater*, 995 F.3d 591, 595 (7th Cir. 2021). A decision by Chief Judge Rosenstengel of this Court found that a similar waiver did not apply to a defendant's rights under the First Step Act when the waiver was made *before* the First Step Act was passed in 2018. *United States v. Glasper*, No. 3:11-cr-30053-NJR, 2020 WL 6363703, at *2–3 (S.D. Ill. Oct. 29, 2020). As with the defendant in *Glasper*, White signed his plea agreement with its waiver before 2018. However, with an appeal pending in *Glasper*, *see Bridgewater*, 995 F.3d at 595 n.2, the Court sees no need to decide this question today.